IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GUIDECRAFT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | |
| OJCOMMERCE, LLC; | ) | |
| OJCOMMERCE.COM, INC.; and NAOMI | ) | **COMPLAINT FOR TRADEMARK** |
| HOME, INC., | ) | **INFRINGEMENT, TRADE DRESS** |
| | ) | **INFRINGEMENT, UNFAIR** |
| | ) | **COMPETITION** |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Guidecraft, Inc., by its attorneys Jacobowitz and Gubits LLP brings this Complaint against Defendants OJCOMMERCE, LLC, OJCOMMERCE.COM, INC., and NAOMI HOME, INC., and alleges as follows:

## STATEMENT OF THE CASE

1.     This is an action by Plaintiff against Defendant for federal trademark infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), common law trademark infringement, common law trade dress infringement, and for substantial and related claims of unfair competition under the statutory and common laws of the State of New York, all arising from Defendant's unauthorized use of Plaintiff's trademark and design in connection with the manufacture, advertising, promotion, and/or sale of Defendant's products, specifically its products that unlawfully imitate and infringe upon Plaintiff's KITCHEN HELPER® line of children's stools, Step-Up children's stools, and High-Rise Step-Up children's stools ("the Infringing Products").

2.      Plaintiff seeks injunctive and monetary relief to retain control over the substantial goodwill associated with its trademarks, trade dress, and product design ("Intellectual Property") which are being unlawfully exploited by Defendant, and to avoid irretrievably lost sales.

## THE PARTIES

3.      Plaintiff, Guidecraft, Inc. (herein, "Guidecraft") is a New York Corporation having a place of business at 204 Route 17, Tuxedo Park, New York 10987.

4.      Defendant OJCommerce, LLC (herein, "OJCommerce") is a Delaware corporation having a principal place of business at 11651 Interchange Circle South, Miramar, Florida 33025.

5.      Upon information and belief, OJCommerce is doing business throughout the United States and within the state of New York, and within this Judicial District.

6.      Upon further information and belief, and based on representations of Defendants' counsel, OJCommerce, LLC sells goods through an interactive website, which Plaintiff believes to be www.ojcommerce.com.

7.      Defendant OJCommerce.com, Inc. (herein, "OJCommerce.com") is a Delaware corporation having a principal place of business at 11651 Interchange Circle South, Miramar, Florida 33025.

8.      Upon information and belief, OJCommerce.com is doing business throughout the United States and within the state of New York, and within this Judicial District.

9.      Upon information and belief, OJCommerce.com, Inc. owns the interactive website ojcommerce.com, through which OJCommerce, LLC and Defendant Naomi Homes sell the infringing products at issue in this litigation.

10.     Defendant Naomi Home, Inc. (herein, "Naomi Home") is a Delaware corporation having an address at 1811 Silverside Road, Wilmington, Delaware 19810.

11.     Upon information and belief, Naomi Home is doing business throughout the United States and within the State of New York, and within this Judicial District.

12.     Upon information and belief, Naomi Home is the house brand for OJCommerce, manufactures the infringing products at issue in this litigation, and thereafter markets and sells the infringing products through, *inter alia*, the interactive website owned by OJCommerce.com.

13.     Upon information and belief, Defendants OJCommerce, OJCommerce.com, and Naomi Home are related entities owned, operated, and controlled by the same individual.

## NATURE OF THE ACTION, JURISDICTION AND VENUE

14.     This is an action in law and equity arising under the Trademark and Unfair Competition Laws of the United States (15 U.S.C. § 1051 *et seq.*) and the statutory and common laws of the state of New York.

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1338. This matter involves a federal question pursuant to 15 U.S.C. §§ 1114 & 1125(a). Diversity jurisdiction is established as this controversy arises between citizens of different states and involves an amount in controversy in excess of the jurisdictional threshold of 28 U.S.C. § 1332. Additionally, supplemental jurisdiction over the state statutory and common law claims exists pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

16.     Venue in this Court is based upon 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

17.     Guidecraft is a manufacturer of fine educational and STEM toys and furniture and, since 1966 has been engaged in the business of designing, manufacturing, marketing, and

selling a wide variety of toys and children's furniture in this Judicial District and elsewhere, principally through resellers and internet sales.

18.    Guidecraft's brand and overall recognition has been guided by 50 years of manufacturing children's products that are tested to meet or exceed international safety standards and which are durable, lasting products made from environmentally certified materials.

19.    Some of Guidecraft's most successful products within its children's furniture lineup are its children's stools, including the KITCHEN HELPER® Children's Stool, the Step-Up Children's Stool, and the High-Rise Step-Up Children's Stool, which Guidecraft has been selling in this Judicial District and elsewhere since 2008.

## Guidecraft's KITCHEN HELPER® Children's Stool

20.    One such line of products developed, manufactured, and marketed by Guidecraft, which is sold under Guidecraft's KITCHEN HELPER® trademark, is a very successful children's stool that permits a child to work with a parent or guardian at counter level.

21.     Guidecraft's KITCHEN HELPER® trademark is registered with the United States Patent and Trademark Office.

22.    Guidecraft has spent a great deal of time and resources developing the Kitchen Helper brand for its children's stools.

23.    Guidecraft is the owner of United States trademark registration No. 5,265,613 for KITCHEN HELPER in connection with nonmetal step stools, portable non-metal platforms enclosed by guard rails or panels and adapted for supporting a standing child and the goodwill associated therewith (herein, the "Registration").

24.    Guidecraft has made the registered KITCHEN HELPER® trademark distinctive and brought it recognition throughout the United States and much of the world through a

multifaceted Internet and catalog based marketing campaign for a high quality, child friendly, and parent friendly product. (A copy of the Registration certificate is attached hereto as Exhibit A).

25.     Guidecraft has devoted many thousands of hours to experimenting, testing, and perfecting KITCHEN HELPER® children's stools that function well, are beautiful, are safe for use by children, and store easily when not in use. Through those efforts, Guidecraft has developed a children's stool that is highly sought after in the marketplace and widely recognized in connection with its KITCHEN HELPER® trademark.

26.     Safety is a critical aspect of Guidecraft's KITCHEN HELPER® children's stools and consumers associate the KITCHEN HELPER® trademark with the safety-oriented Guidecraft children's stools. Guidecraft has worked closely with the United States Consumer Product Safety Commission (herein, the "USCPSC") to meet and exceed the rigorous safety tests dictated by the USCPSC in the children's market where safety is of supreme importance.

27.     Guidecraft has spent tremendous time and resources developing the uniquely aesthetic, non-functional design that is associated with its KITCHEN HELPER® children's stools, as well as the uniquely aesthetic, non-functional designs that are associated with Guidecraft's Step-Up and High-Rise Step-Up children's stools and has trade dress protection in those designs.

28.     The Guidecraft KITCHEN HELPER® children's stool design includes, but is not limited to, the non-functional features of the positioning of four large cut-out shapes in the sides of the classic version (see, e.g., top left picture from Paragraph 44 below) of the KITCHEN HELPER® children's stools, the half-moon shape cut into the side below the standing platform, stylized tapered, two-toed feet at the base of each of the legs, the visual flow and shape of the

walls and bars surrounding and below the platform, the colors in which the KITCHEN HELPER®, Step-Up, and High-Rise Step-Up children's stools are sold, and the overall appearance of the KITCHEN HELPER® children's stools.

29.     The non-functional design of the KITCHEN HELPER® children's stools has become known to the public through years of Guidecraft's advertising and significant sales, acquiring secondary meaning to the public and serving to designate to consumers that Guidecraft is the origin of those children's stools.

30.     Defendants' product is inferior to the genuine Guidecraft product for many reasons including the following.

(a)     Defendants copied an older version of the Guidecraft product. Guidecraft subsequently made significant changes to overall product stability and safety, including adding clips versus a screw to hold down the platform, adding a non-slide mat, and adding a mesh net that holds the child in the unit.

(b)     Defendants added a bar that goes across the back of the unit, and when not used is a scissoring hazard.

(c)     Defendants' product does not have a tracking sticker, which is required by the Consumer Product Safety Commission (CPSC), so there is no notice of country of origin, no manufacturer's name and address, no batch number, etc.

(d)     Defendants barely finish their wood and use a water-based coating which readily scratches off. If wood and water come in contact, which they will with use over time, then the wood can deteriorate and fail. Guidecraft uses a polyurethane coating over its entire product, which can withstand water.

(e)     The Guidecraft product uses hardwood posts which are flexible and will not break from normal use by a child over time. Defendants use pine, which is less flexible, to cut costs.

(f)     The Guidecraft product uses metal to metal hardware, barrel bolts to barrel nuts. Defendants use wood screws and plastic nuts, reducing cost but also reducing quality and safety.

(g)     The shapes of the cutouts in Defendants' product could cause injury from having a child's feet or hands get caught.

(h)     Many of these unsafe elements of Defendants' product violate the regulations of the CPSC. The fact that the product is on the market raises a strong presumption that the product has not been tested at all as required by law, and possibly that the product should be recalled.

### Guidecraft's Step-Up Children's Stool

31.     Guidecraft has also spent a great deal of time developing and selling its Step-Up children's stool. The Step-Up children's stool has also become highly sought after in the marketplace due to its safety, beauty, and functionality.

32.     The Guidecraft Step-Up children's stool design (see left picture in second row of pictures provided under Paragraph 44 below) includes, but is not limited to, the non-functional features of the shape of the upper and lower cut-outs in the sides of the Step-Up children's stools, and the positioning of those cut-outs in the sides of the Step-Up children's stools, the curvature of the uprights on the climbing side of the Step-Up children's stools, the side-toe at the base of the front legs and only the front legs of the Step-Up children's stools, the visual flow and shape

of the upright side-members, the shape and placement of the finger slots in the tops of the side-members, and the overall appearance of the Step-Up children's stools.

33.     The non-functional design of the Step-Up children's stools has become known to the public through years of Guidecraft's advertising and significant sales, acquiring secondary meaning to the public and serving to designate to consumers that Guidecraft is the origin of those children's stools.

<b>Guidecraft's High-Rise Step-Up Children's Stool</b>

34.     Guidecraft has also spent a great deal of time developing and selling its High-Rise Step-Up children's stool. The High-Rise Step-Up children's stool has also become highly sought after in the marketplace due to its safety, beauty, and functionality.

35.     The Guidecraft High-Rise Step-Up children's stool design (see left picture in third row of pictures from Paragraph 44 below) includes, but is not limited to, the non-functional features of the large curved and open hand grips, the position of the large curved and open hand grips at the top of the High-Rise Step-Up children's stools, the similarly sized top and bottom steps, the curvature of the support under each step, the open side uprights along the first step and closed side uprights along the second step, the angularity of the side uprights rising up to the curved and open hand grips, the shape and flow of the side uprights, the side-toe at the base of the front legs and only the front legs of the of the High-Rise Step-Up children's stools, the visual flow and shape of the High-Rise Step-Up stools, and the overall appearance of the High-Rise Step-Up children's stools.

36.     The non-functional design of the High-Rise Step-Up children's stools has become known to the public through years of Guidecraft's advertising and significant sales, acquiring

secondary meaning to the public and serving to designate to consumers that Guidecraft is the origin of those children's stools.

## DEFENDANTS' ACTS OF INFRINGEMENT

37.     From June 2012 until February 2018, Defendants OJCommerce.com and OJCommerce were wholesale purchasers of Plaintiff's toys and furniture goods, and engaged in selling the products for retail prices.

38.     During its time as resellers of Guidecraft's goods, Defendants OJCommerce.com and OJCommerce sold thousands of units of the KITCHEN HELPER® line of Guidecraft children's stools; Guidecraft's Step-Up children's stools; and Guidecraft's High-Rise Step-Up children's stools as a reseller for Guidecraft.

39.     During their time as Guidecraft resellers, OJCommerce.com, and OJCommerce, learned that the KITCHEN HELPER® trademark was well recognized and respected in the marketplace.

40.     Also during their time as Guidecraft resellers, OJCommerce.com, and OJCommerce learned much about the form of the Guidecraft children's stools and became well aware of Guidecraft's success with the KITCHEN HELPER® product form.

41.     Defendants OJCommerce.com and OJCommerce also learned much about the success of the Guidecraft Step-Up children's stool and High-Rise Step-Up children's stools product form during their time as Guidecraft resellers.

42.     Ultimately, Defendants OJCommerce.com and OJCommerce were terminated as resellers for Guidecraft based on their abusive re-selling practices.

43.     Having recognized the value of the KITCHEN HELPER® line of Guidecraft children's stools, Guidecraft's Step-Up children's stools, and Guidecraft's High-Rise Step-Up

children's stools during its role as a Guidecraft reseller, Defendants OJCommerce and OJCommerce.com, as well as their related and/or affiliated company, Naomi Home, took it upon themselves to begin developing, marketing, and selling knock-off, infringing versions of these products (herein, the "Infringing Products") throughout the United States and within this Judicial District.

44.    Defendants' use of Guidecraft's designs (see Exhibits B and C) in connection with its marketing and sale of the Infringing Products are depicted herein via pictures of representative Guidecraft products aligned next to Defendants Infringing Products (see also Exhibits B and C):



**Guidecraft KITCHEN HELPER® Children's Stool**



**Defendants' Infringing Stool**





**Guidecraft Step-Up Children's Stool**     **Defendants' Infringing Stool**

45.     Specifically, upon information and belief, Defendant Naomi Home develops, markets, and sells the Infringing Products throughout the United States, including the State of New York, on the Internet through Defendant OJCommerce.com's interactive website, which provides a link that consumers click on to purchase the infringing products, as well as through online retailer Amazon. (A copy of the screen printout from Amazon.com is attached hereto as Exhibit B). Upon further information and belief, Naomi Homes relies upon and/or otherwise contracts with Defendant OJCommerce to sell the Infringing Products on Defendant OJCommerce.com's interactive website. (A copy of the screen printout from OJCommerce.com is attached hereto as Exhibit C).

46.     Upon information and belief, Defendant OJCommerce, LLC is a reseller for Naomi Home that markets and sells the Infringing Products throughout the United States, including the State of New York, on the Internet through Defendant OJCommerce.com's

interactive website, which provides a link that consumers click on to purchase the infringing products. (see Exhibit C).

47.     Upon information and belief, OJCommerce.com, Inc. owns the interactive website ojcommerce.com, through which its affiliated companies, Defendant OJCommerce, LLC and Defendant Naomi Homes, market and sell the Infringing Products at issue in this litigation throughout the United States, including the State of New York, on the Internet. (see Exhibit C).

48.     The Infringing Products are competitive with Guidecraft's products described above.

### Trade Mark Infringement

49.     Naomi Home has unlawfully marketed and sold low-quality stools utilizing Guidecraft's registered KITCHEN HELPER® trademark throughout the United States, and within the State of New York, through sales on Amazon (see Exhibit B).

50.     In its attempts to sell the Infringing Products through Amazon, Naomi Home has relied upon Amazon's search engine optimization to place Naomi Home's advertisements for the Infringing Products as an early displayed advertisement when a potential Amazon purchaser searches for Guidecraft's registered KITCHEN HELPER® trademark.

51.     In addition, Naomi Home has unlawfully marketed and sold low-quality stools utilizing Guidecraft's registered KITCHEN HELPER® trademark on the Internet throughout the United States, and within the State of New York, through reseller OJCommerce on Defendant OJCommerce.com's interactive website, www.ojcommerce.com. (see Exhibit C).

52.     Defendants have damaged Guidecraft and continue to cause Guidecraft harm by, among other improprieties, confusing the public and diluting Guidecraft's protected intellectual

property through their continued use of Guidecraft trademarks, Guidecraft's trade dress, and Guidecraft's copyright protected product designs on inferior quality stools.

53.     In connection with the marketing and sale of the Infringing Products, OJCommerce.com, OJCommerce, and Naomi Home have unlawfully used and are currently unlawfully using Guidecraft's registered KITCHEN HELPER® trademark throughout the United States of America, including the State of New York.

54.     OJCommerce.com, OJCommerce, and Naomi Home have unlawfully used and are currently unlawfully using Guidecraft's registered KITCHEN HELPER® trademark in connection with knock-off products made to appear to be Guidecraft products, *i.e.*, the Infringing Products.

55.     Defendants' use of Guidecraft's registered KITCHEN HELPER® trademark (see Exhibits B and C) constitutes trademark infringement in violation of U.S. and state trademark law.

56.     Defendants' use of Guidecraft's registered KITCHEN HELPER® trademark in connection with the sale, offering for sale, advertising, and distribution of goods included in the Registration of Guidecraft's KITCHEN HELPER® trademark constitutes a false designation of origin that is likely to cause confusion or mistake or to deceive consumers into believing that Defendants' goods are associated with Guidecraft and to deceive consumers into believing that Defendants' goods are sponsored, approved, or authorized by Guidecraft.

57.     On information and belief, Defendants have acted with full knowledge that Guidecraft owns the Registration for the KITCHEN HELPER® trademark and Defendants have acted willfully and intentionally to misrepresent their products as being affiliated with Guidecraft.

58.     Regardless of intent, Defendants' infringing use of Guidecraft's registered KITCHEN HELPER® trademark has caused consumers actual confusion and mistake, and is likely to cause such confusion and mistake, as to the source of Defendants' goods.

59.     Defendants have unlawfully used and continue to unlawfully use and misappropriate the goodwill and reputation Guidecraft has established in Guidecraft's registered KITCHEN HELPER® trademark in such a way that consumers have been and are likely to continue to be lured to purchase Defendants' products with the mistaken belief that Defendants' goods are Guidecraft goods or have an affiliation, sponsorship, or other connection with Guidecraft.

60.     Defendants sales of products that unlawfully bear Guidecraft's registered KITCHEN HELPER® trademark, but are inferior in quality to the genuine products of Guidecraft, cause harm to Guidecraft by tarnishing Guidecraft's reputation for high quality products.

61.     Guidecraft has been and will continue to be damaged by Defendants' foregoing acts of infringement, misappropriation, unfair competition, deceptive trade practices, and false advertising.

**<u>Trade Dress Infringement</u>**

62.     Defendants' use of Guidecraft's designs (see Exhibits B and C) constitutes trade dress infringement in violation of U.S. trademark law. Below are pictures of representative Guidecraft and Defendant children's stool products (see also Exhibits B and C):

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

 

Guidecraft                         Defendants

 

Guidecraft                 Defendants

63.     Defendants have unlawfully used and are currently unlawfully using Guidecraft's

trade dress protected children's stool designs in the United States.

64.     Naomi Home has unlawfully marketed and attempted to sell stools utilizing Guidecraft's trade dress protected children's stool designs throughout the United States, and within the State of New York, through sales on Amazon (see Exhibit B).

65.     In addition, Naomi Home has unlawfully marketed and attempted to sell stools utilizing trade dress protected children's stool designs on the Internet throughout the United States, and within the State of New York, through reseller OJCommerce on Defendant OJCommerce.com's interactive website, www.ojcommerce.com. (see Exhibit C).

66.     Defendants have unlawfully used and are currently unlawfully using Guidecraft's trade dress protected children's stool designs on knock-off products made to appear to be Guidecraft goods or have an affiliation, sponsorship, or other connection with Guidecraft.

67.     Defendants' use of Guidecraft's trade dress protected designs (see Exhibits B and C) constitutes trade dress infringement in violation of U.S. trademark law.

68.     Defendants have used and continue to use Guidecraft's trade dress protected designs on knock-off children's stools of inferior quality to take sales from Guidecraft and profit from such infringing sale of goods.

69.     Defendants sales of products that use Guidecraft's trade dress protected designs on knock-off children's stools of inferior quality cause harm to Guidecraft by tarnishing Guidecraft's reputation for high quality products.

70.     Defendants' willful and persistent use of Guidecraft's trade dress protected appearances of its children's stools has given rise to imminent and irreversible harm.

## <u>COUNT ONE — TRADEMARK INFRINGEMENT</u><br><u>15 U.S.C. § 1114 (LANHAM ACT § 32)</u>

71.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

72.     Defendants' continued use of Guidecraft's KITCHEN HELPER® trademark, United States trademark Registration No. 5,265,613, constitutes an infringement of Guidecraft's registered trademark and is likely to have and to continue to cause confusion, mistake, and deception to the public as to the identity and origin of Guidecraft's goods, causing irreparable harm to Guidecraft for which there is no adequate remedy at law.

73.     Guidecraft has incurred attorneys' fees to enforce its trademark rights, and Guidecraft has suffered damages as a result of Defendants' actions.

74.     Defendants are liable to Guidecraft for trademark infringement under 15 U.S.C. § 1114 in an amount to be determined at trial.

75.     Defendants' acts of infringement have been and continue to be deliberate, willful, and wanton, making this an exceptional case under 15 U.S.C. § 1117.

76.     Plaintiff is entitled to a permanent injunction against Defendants, as well as other remedies under the Lanham Act, including but not limited to compensatory damages, disgorgement of Defendants' profits, costs of this action, attorneys' fees, and treble damages.

## COUNT TWO – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN 15 U.S.C. § 1125 (LANHAM ACT § 43)

77.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

78.     The registered KITCHEN HELPER® trademark, as used by Guidecraft in connection with its goods, is a distinctive mark and has become associated with Guidecraft and thus exclusively identifies Guidecraft's children's stools.

79.     Defendants' continued use of Guidecraft's registered trademark to promote, market, or sell its knock-off products in direct competition with Guidecraft products constitutes unfair competition and false designation of origin pursuant to 15 U.S.C. § 1125(a).

80.     Defendants have used and continue to use Guidecraft's trademarked design in the operation of Defendants' retail business.

81.     Defendants have promoted their products using Guidecraft's registered trademark in order to compete directly with Guidecraft.

82.     Defendants' continued use of Guidecraft's registered trademark is likely to cause confusion, mistake, and deception among consumers.

83.     Defendants' unfair competition has caused and will continue to cause damage to Guidecraft, including the expenditure of attorneys' fees, and is causing irreparable harm to Guidecraft for which there is no adequate remedy at law.

84.     Guidecraft is entitled to a permanent injunction against Defendants, as well as other remedies under the Lanham Act, including but not limited to compensatory damages, disgorgement of Defendants' profits, costs of this action, attorneys' fees, and treble damages.

**COUNT THREE – TRADE DRESS INFRINGEMENT**
**15 U.S.C. § 1125 (LANHAM ACT § 43)**

85.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

86.     The trade dress of the KITCHEN HELPER® children's stools is non-functional.

87.     The trade dress of the KITCHEN HELPER® children's stools is unique and distinctive and has acquired secondary meaning through Guidecraft's extensive marketing expenditures and the sale of tens of thousands of KITCHEN HELPER® children's stools since 2008. Those stools, which are the first stools Guidecraft brought to the market, are recognized by customers and users, as well as visitors who see these outstanding stools in nursery facilities and friend's homes, such that a large number of consumers associate Guidecraft as the source of KITCHEN HELPER® children's stools under the Guidecraft trade dress.

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

88.     The trade dress of the Step-Up children's stools is non-functional.

89.     The trade dress of the Step-Up children's stools is unique and distinctive and has acquired secondary meaning through Guidecraft's extensive marketing expenditures, which have resulted in the sale of thousands of Step-Up children's stools that are recognized by customers, users, and visitors who see these outstanding stools in nursery facilities and friend's homes, such that a large number of consumers associate Guidecraft as the source of Step-Up children's stools under the Guidecraft trade dress.

90.     The trade dress of the High-Rise Step-Up children's stools is non-functional.

91.     The trade dress of the High-Rise Step-Up children's stools is unique and distinctive and has acquired secondary meaning through Guidecraft's extensive marketing expenditures, which have resulted in the sale of thousands of High-Rise Step-Up children's stools that are recognized by customers, users, and visitors who see these outstanding stools in nursery facilities and friend's homes, such that a large number of consumers associate Guidecraft as the source of High-Rise Step-Up children's stools under the Guidecraft trade dress.

92.     Defendants have used and continue to use Guidecraft's trade dress protected KITCHEN HELPER®, Step-Up, and High-Rise Step-Up children's stools designs in the operation of Defendants' retail business.

93.     Defendants' continued use of Guidecraft's protected trade dress designs of children's stools is likely to confuse, cause mistake, and/or deceive consumers into believing that Defendants' stools are those of Guidecraft, or are affiliated with, endorsed by, sponsored by, or otherwise associated with Guidecraft.

94.     Defendants' continued use of non-functional designs of Guidecraft's KITCHEN HELPER®, Step-Up, and High-Rise Step-Up children's stools constitutes trade dress infringement in violation of U.S. trademark law under 15 U.S.C. § 1125(a).

95.     Defendants' trade dress infringement has caused and will continue to cause damage to Guidecraft, including the expenditure of attorneys' fees, and is causing irreparable harm to Guidecraft for which there is no adequate remedy at law.

96.     Guidecraft is entitled to a permanent injunction against Defendants, as well as other remedies under the Lanham Act, including but not limited to compensatory damages, disgorgement of Defendants' profits, costs of this action, attorneys' fees, and treble damages.

## COUNT FOUR – COMMON LAW UNFAIR COMPETITION

97.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

98.     Defendants have engaged in unfair competition by intentionally using Guidecraft's registered KITCHEN HELPER® trademark to hold out their products as those of Guidecraft, or as affiliated with, sponsored by, or otherwise connected with Guidecraft. Guidecraft has established that trademark honestly and through a long course of fair dealing with the public.

99.     Defendants' actions have been willful as evidenced by their plan over a period of months to divert business from Guidecraft.

100.    Defendants' actions have caused actual deceit and fraud upon the public.

101.    Guidecraft has been damaged in an amount to be determined at trial.

## COUNT FIVE – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

102.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

103.     Defendants are illegally competing with Guidecraft and interfering with its prospective business relations.

104.     Defendants' actions involving the sale of children's stools using Guidecraft's registered KITCHEN HELPER® trademark and copyright protected children's stool designs were calculated to cause damage to Guidecraft's business.

105.     Defendants have interfered with Guidecraft's business relationships, prospective business relationships, and ability to conduct business.

106.     As a result of Defendants' actions, Guidecraft has been damaged in an amount to be proven at trial.

## COUNT SIX - UNJUST ENRICHMENT

107.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

108.     Defendants organized and initiated a competing business to pass-off products as those of Guidecraft.

109.     Defendants misappropriated the brand and appearance of Guidecraft's products to divert business from Guidecraft.

110.     As a result of the conduct described hereinabove, Defendants have been and will continue to be unjustly enriched at the expense and to the detriment of Guidecraft.

111.     By their unlawful actions, Defendants have been unjustly enriched and thereby damaged Guidecraft in an amount to be proven at trial.

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

## COUNT SEVEN – NEW YORK TRADEMARK LAW
### (N.Y. Gen. Bus. Law § 360 et seq.)

112.    The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

113.    Guidecraft's registered KITCHEN HELPER® trademark has become famous in the State of New York through its extensive use with Guidecraft children's stools.

114.    Defendants willfully intended to trade on Guidecraft's reputation or to cause infringement or dilution of Guidecraft's registered KITCHEN HELPER® trademark by selling knock-off versions of Guidecraft's well known children's stools in connection with Guidecraft's KITCHEN HELPER® mark.

115.    Guidecraft is entitled to an injunction to restrain Defendants' manufacture, use, display or sale of its infringing products and to Defendants' profits derived from and all damages suffered by reason of such wrongful manufacture, use, display or sale.

### JURY DEMAND

116.    Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Grant of a permanent injunction enjoining and restraining Defendant and its officers, agents, servants, employees, owners, representatives, and attorneys, and all those in active concert of participation with them, from:

1.    Selling any products bearing and offering any services utilizing Plaintiff's Intellectual Property, or any variations thereof, in or as part of any business, service or commercial activity;

2. Using Plaintiff's Intellectual Property or any variations thereof, in or as part of any business, service or commercial activity;

3. Using Plaintiff's Intellectual Property, or any other identical or similar mark, trade dress or design in relation to any products or services related to toys and children's furniture or in any manner likely to cause confusion, mistake or deception;

4. Filing or pursuing any application for registration of Plaintiff's Intellectual Property as a trademark, service mark, trade dress or patented design in any jurisdiction in the U.S.;

5. Offering for sale, selling or marketing merchandise that tends in any way to deceive, mislead or confuse the public into believing that Defendant's merchandise in any way originates with, is sanctioned by, or is affiliated with Plaintiff;

6. Otherwise competing unfairly with Plaintiff;

7. Engaging in further acts of misrepresentation regarding Plaintiff or Plaintiff's goods;

8. Engaging in further acts infringing Plaintiff's rights under New York law;

B. Directing Defendant to:

1. Notify all customers, sellers, distributors, suppliers, manufactures, advertisers, and other persons involved in Defendant's offer of, or attempt to offer, goods under and using Plaintiff's Intellectual Property, that Plaintiff's Intellectual Property is owned and controlled exclusively by and for the benefit of Plaintiff;

    2. Deliver to Plaintiff to be destroyed all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendant's possession or control and bearing and/or utilizing Plaintiff's Intellectual Property (or any other name, or other designation, description, or representation that violates 15 U.S.C. § 1125(a)) );

    3. Within ten (10) days of judgment, take all steps necessary to remove from Defendant's place(s) of business and website(s), all references to Plaintiff's Intellectual Property, including but not limited to the offering for sale of products that infringe the same.

C. Ordering an accounting by Defendant of all revenues and profits derived from the providing of goods through the unauthorized use of Plaintiff's Intellectual Property;

D. Ordering Defendant to account for and pay over to Plaintiff any and all revenues and profits derived by it and all damages sustained by Plaintiff by reason of the acts complained of in this Complaint, including an assessment of interest on the damages so computed, and that the damages be trebled pursuant Section 35 of the Lanham Act, 15 U.S.C. §1117, as well as 35 U.S.C. §§ 284 and 289, and all further applicable law;

E. Awarding Plaintiff Defendant's profits, awarding an amount equal to three times Plaintiff's actual damages, and awarding Plaintiff the costs of this action along with Plaintiff's reasonable attorneys' fees;

F. That each such award of damages be enhanced to the maximum available for each infringement in view of each of Defendant's willful infringements of Plaintiff's rights;

G. That Plaintiff be awarded punitive or exemplary damages under New York law because of the egregious, malicious, and tortious conduct of Defendant complained of herein;

H.     That Plaintiff recover the costs of this action including its expenses and reasonable attorneys' fees pursuant to 15 U.S.C. §1117, 35 U.S.C. § 285 and all further applicable law, because of the deliberate and willful nature of the infringing activities of Defendant sought to be enjoined hereby, which make this an exceptional case warranting such an award;

I.     That Plaintiff be awarded pre-judgment and post-judgment interest;

J.     Enter an order for Judgment in favor of Plaintiff and against Defendant on each and every Claim of this Complaint, including by granting the following relief against Defendant:

1. That Defendant be adjudged to have engaged in federal unfair competition and trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125 and unfair competition and trademark infringement under the common law and statutory laws of the State of New York;

2. That Defendant be adjudged to have infringed Plaintiff's mark and trade dress by the acts complained of herein;

3. Requiring that Defendant, within thirty (30) days after service of notice of the entry of judgment, or an injunction pursuant thereto, file with the Court and serve on Plaintiff's counsel a written report under oath setting forth in detail the manner in which Defendant has complied with the Court's order;

4. Awarding to Plaintiff such other and further relief as the Court may deem just and proper or otherwise provided by law.

K.     Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: Walden, New York
        June _____, 2019

Kelly A. Pressler, Esq. (KP0511)
Jacobowitz & Gubits, LLP
158 Orange Avenue
Walden, New York 12586
Telephone: (845) 778-2121
kap@jacobowitz.com
*Counsel for Guidecraft, Inc.*

<u>CORPORATE VERIFICATION</u>

STATE OF NEW YORK     )
                        ss:
COUNTY OF ORANGE     )

GARY BILEZIKIAN, being duly sworn, says:

I am a member of GUIDECRAFT, INC., plaintiff corporation in the action herein.

I have read the annexed Complaint dated June _____, 2019, know the contents thereof and the same are true to my knowledge, except those matters therein which are to be alleged on information and belief, and as to those matters I believe them to be true.

_____
GARY BILEZIKIAN

Sworn to before me this _11th_
day of June, 2019.

_____
Notary Public

PATRICIA J. MARSH
Notary Public, State of New York
Qualified in Rockland County
No. 4601080
Commission Expires May 31, 2022